## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IVAN J. WALTON, | ) | |
| # 04045-025, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-00451-NJR |
| | ) | |
| DIRECTOR OF THE ILLINOIS | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| K. HUNTER, WARDEN ETIENNE, | ) | |
| MAJOR DENNISON, B. ALLARD, | ) | |
| and J. BARWICK, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff Ivan J. Walton, who is currently detained at the United States Medical Center for Federal Prisoners located in Springfield, Missouri, brings this civil rights action pursuant to 42 U.S.C. § 1983. In his complaint, Plaintiff claims that officials at Shawnee Correctional Center ("Shawnee") deprived him of 141.5 days of earned good conduct credit pursuant to an Earned Good Conduct Credit Contract (EGCCC) and, in doing so, unnecessarily prolonged his incarceration in state prison in 2015. (Doc. 1, pp. 8-18).

In connection with this claim, Plaintiff now sues the Director of the Illinois Department of Corrections (IDOC Director), K. Hunter (acting warden), Warden Etienne (associate warden of programs), Major Dennison, B. Allard (clinical services supervisor), and J. Barwick (records department supervisor) for violating his rights under the Eighth and Fourteenth Amendments. Plaintiff also brings claims against these defendants for negligence, breach of contract, and false imprisonment under Illinois state law. He seeks monetary damages. (*Id*. at 8).

## Merits Review Pursuant to 28 U.S.C. § 1915A

This case is now before the Court for preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The complaint survives preliminary review under this standard.

## The Complaint

While incarcerated at Shawnee Correctional Center in 2014, Plaintiff signed an Earned Good Conduct Credit Contract (EGCCC). (Doc. 1, pp. 8-18). Pursuant to the terms of the contract, Plaintiff was eligible to receive a half day of earned good conduct credit for each full day of satisfactory work he performed on Shawnee's recycling detail. (*Id*. at 10-11). Plaintiff signed the contract on February 20, 2014, and he allegedly provided satisfactory services for 283 days during the next twelve months. (*Id*. at 16). He received no disciplinary reports while in IDOC custody. Accordingly, Plaintiff was allegedly entitled to receive 141.5 days of earned good conduct credit under the contract. He received none. (*Id*.).

Plaintiff's work supervisor, Defendant Dennison, presented Plaintiff and two other inmates (*i.e.*, Inmates Clark and Johnson) with an EGCCC for signature on February 20, 2014. (*Id*. at 10). The three inmates signed the EGCCC in Defendant Dennison's presence the same day. (*Id*. at 11). Although Defendant Dennison promised to provide them with a copy of the signed contract, he failed to do so.

In May 2014, Plaintiff learned that Defendant Barwick lost the EGCCC. Defendants Barwick and Dennison assured Plaintiff and his fellow inmates that the issue would be "addressed and corrected." (*Id*.). Despite these assurances, Plaintiff and Inmate Clark never received any earned good conduct credit for their work on the recycling detail. Neither inmate was offered an opportunity to sign another EGCCC. In contrast, Inmate Johnson received his earned good conduct credit, even after he was terminated from the recycling detail for misconduct. (*Id*. at 12). Plaintiff attributes this different treatment to race-based discrimination. Plaintiff and Inmate Clark are both African-American. (*Id*. at 11). Inmate Johnson is White. (*Id*.).

Plaintiff filed numerous grievances about his lost or denied EGCCC. In June and July, he directed verbal and written complaints to Defendant Dennison. Although this defendant assured Plaintiff that he would correct the error, Defendant Dennison took no action. He also failed to respond to Plaintiff's written grievances. (*Id*. at 12).

In July and August, Plaintiff directed verbal and written complaints to Defendants Ramsey and Allard. He asked both defendants for his earned good conduct credit. Defendant Ramsey told Plaintiff that she discussed the matter with Defendant Dennison, who assured her that he would address the problem. Defendant Allard never responded to Plaintiff's grievances. (*Id*. at 12-13).

Between August and December, Plaintiff directed numerous verbal and written complaints to Defendants Hunter and Etienne. Defendant Hunter offered only verbal assurances that the issue would be addressed. Neither defendant responded to Plaintiff's written grievances. (*Id*. at 13).

On or around December 15, 2014, Plaintiff wrote a letter directly to the IDOC Director, informing the director of the EGCCC issues and requesting an investigation into the matter. Defendant IDOC Director never responded.

On or around March 13, 2015, Plaintiff filed another grievance "specifically stating that institution staff never responded to his December 2014 grievance." (*Id.*). He renewed his request for resolution of the EGCCC claim because an earned good conduct credit award at that time would have resulted in Plaintiff's immediate release from state prison. (*Id.*).

Around the same time, Plaintiff filed a petition for a writ of habeas corpus in state court. In the petition, he requested an order directing Defendant Hunter to award Plaintiff his earned good conduct credit and to immediately release Plaintiff from prison. The state court ultimately dismissed the petition in May 2015, allegedly because an award of earned good conduct credit would result in Plaintiff's release from state prison but not from "custody." (*Id.* at 14).

Around the same time, Defendant Allard told Plaintiff that the matter would be "properly resolved." (*Id.*). Between June and October, Plaintiff wrote several letters to Shawnee's records department and the IDOC's headquarters. (*Id.* at 15). He informed the defendants of his new address and requested information regarding the status of his earned good conduct credit. He received no response.

According to the complaint, none of the defendants has undertaken any efforts to resolve Plaintiff's claim in accordance with IDOC administrative rules and regulations. (*Id.*). His claims were never presented to an impartial fact-finder, who had authority to properly address the matter. Plaintiff was never notified by the defendants that his earned good conduct credit was revoked or withheld. He was never allowed to present evidence or witnesses at a hearing. He received no written statement or explanation as to why he was denied earned good conduct

credit. Finally, he never received information regarding his right to appeal a decision made by the defendants to deprive him of his earned good conduct credit.

## Discussion

The Court finds it convenient to divide the complaint into the following enumerated counts. The organization of these counts should not be construed as an opinion regarding their merits. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1:** **Eighth Amendment deliberate indifference claim against Defendants for failing to take steps to correct the deprivation of Plaintiff's earned good conduct credit despite their knowledge that this error would unnecessarily prolong his incarceration.**
>
> **Count 2:** **Fourteenth Amendment claim against Defendants for depriving Plaintiff of earned good conduct credit without due process of law.**
>
> **Count 3:** **Fourteenth Amendment equal protection claim against Defendants for depriving Plaintiff of his earned good conduct credit because of his race.**
>
> **Count 4:** **State law negligence, breach of contract, and false imprisonment claims against Defendants.**

As discussed in more detail below, the individual capacity claims in **Counts 1, 2, 3,** and **4** shall proceed against the defendants, however, all official capacity claims against the defendants shall be dismissed without prejudice.

## Count 1

Plaintiff alleges that the defendants subjected him to cruel and unusual punishment when they deprived him of his earned good conduct credits for no penological reason, in violation of the Eighth Amendment (**Count 1**). A plaintiff states a claim for an Eighth Amendment violation if he is incarcerated for longer than he should have been, based on the deliberate indifference of

prison officials. *Childress v. Walker*, 787 F.3d 433 (7th Cir. 2015) (citing *Burke v. Johnston*, 452 F.3d 665, 667 (7th Cir. 2006) (observing that the plaintiff's allegations that "he was detained in jail longer than he should have been due to the 'deliberate indifference and delay' of DOC officials," "if proved, would establish a violation of [his] Eighth Amendment right to be free from cruel and unusual punishment"); *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001) (holding that plaintiff's allegations that he was imprisoned too long due to the deliberate indifference of prison officials state a claim for a violation of the Eighth Amendment)).

According to the complaint, each defendant knew that Plaintiff sought earned good conduct credit pursuant to his EGCCC. They also knew that the deprivation of these credits directly impacted the length of his incarceration. Plaintiff maintains that his incarceration was prolonged by 141.5 days because of the defendants' inaction.

Section 1983 liability arises from personal responsibility for a constitutional deprivation, but personal responsibility is not limited to direct "personal participation" in the offending act. *Childress*, 787 F.3d at 440. Liability may arise "'if the conduct causing the constitutional deprivation occurs at [the prison official's] direction or with her knowledge or consent.'" *Id*. (citations omitted). The complaint supports an Eighth Amendment claim against each defendant under this standard. Plaintiff notified the defendants, verbally and/or in writing, that he was deprived of his earned good conduct credit. The defendants acknowledged the error and promised to address it. Despite their knowledge of the error and its direct impact on Plaintiff's incarceration, the defendants ultimately took no steps to rectify the problem. **Count 1** survives screening against each defendant, in his or her individual capacity.

**Count 2**

Plaintiff also alleges that he was deprived of a protected liberty interest without due process of law under the Fourteenth Amendment (**Count 2**), when he was denied earned good conduct credits without notice, a hearing, a summary of the decision, or an opportunity to appeal. In order to state a due process claim, Plaintiff must first show that he was deprived of a liberty interest and, second, that this deprivation took place without the procedural safeguards necessary to satisfy due process. The allegations satisfy both of these requirements for screening purposes.

Although the Constitution does not guarantee good conduct credit for good behavior or education programs, the State may create a liberty interest. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Montgomery v. Anderson*, 262 F.3d 641, 645 (7th Cir. 2001). Once awarded, good conduct credits become a statutory liberty interest. *Wolff*, 418 U.S. at 557. The Seventh Circuit has repeatedly held that prisoners have a protected liberty interest in good conduct credit that they have earned. *Thomas v. McCaughtry*, 201 F.3d 995, 999 n. 4 (7th Cir. 2000); *Meeks v. McBride*, 81 F.3d 717, 719 (7th Cir. 1996).

The question in this case is whether Plaintiff *earned* good conduct credit pursuant to the terms of the EGCCC. The Seventh Circuit has explained that if "the State's action will inevitably affect the duration of the sentence, there is due process protection, but there is no such protection for action that merely might affect the duration of the sentence." *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996) (citing *Sandin v. Connor*, 515 U.S. 472, 487 (1995) (internal quotation marks omitted)). In other words, no liberty interest arises unless the good conduct credits are "inevitable." *Id.*; *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003) (plaintiff had a liberty interest in earned credit time and credit-earning class); *Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (State of Illinois created a statutory right to good conduct credit for prisoners).

*But see Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (finding conclusory allegation that plaintiff "would" have received good-time credit insufficient to state a due process claim).

In the complaint, Plaintiff alleges more than a mere possibility of receiving earned good conduct credits under the EGCCC. He explicitly states that he earned 141.5 days of credit, and the defendants simply refused to honor the contract. Nevertheless, they acknowledged the error by repeatedly telling Plaintiff that they would "address," "resolve," or "correct" the problem. The only reason he did not receive these credits, according to the complaint, is because the defendants failed to follow through with their promise.

In addition, Plaintiff points to numerous alleged violations of procedural safeguards before he was deprived of the earned good conduct credits. He claims that he was deprived of earned good conduct credits without any notice, an opportunity to present evidence and testimony, or the right to appeal the decision. Given these allegations, the Court finds that Plaintiff has sufficiently pled a Fourteenth Amendment due process claim against the defendants in their individual capacities. **Count 2** is subject to further review against each individual defendant.

## Count 3

Finally, Plaintiff alleges that he has been treated differently because of his race, in violation of his right to equal protection of the law under the Fourteenth Amendment (**Count 3**). The Equal Protection Clause of the Fourteenth Amendment prohibits a state from depriving persons within its jurisdiction of equal protection of the laws. U.S. CONST. amend. XIV. Generally speaking, a plaintiff who asserts an equal protection violation based on race "must establish that a state actor has treated him different[ly] than persons of a different race and that the state actor did so purposefully." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000)

(citing *Washington v. Davis*, 426 U.S. 229 (1976); *Indianapolis v. Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743 (7th Cir. 1999)). "Purposeful discrimination" occurs when the state actor singles out a particular group for disparate treatment and takes action with the intention of causing an adverse effect on the identifiable group. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982).

In the complaint, Plaintiff indicates that the defendants treated him and a fellow African-American inmate (Inmate Clark) differently than a similarly situated White inmate (Inmate Johnson). Plaintiff attributes this treatment to race-based discrimination. Whether the different treatment was motivated by purposeful discrimination remains to be seen. At this early stage, the Court will allow **Count 3** to proceed against each individual defendant.

## Count 4

Plaintiff's state law negligence, false imprisonment, and breach of contract claims may proceed in this action for now. (Doc. 1, p. 9). Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). Plaintiff's state law claims arise from the same facts that give rise to his federal constitutional claims against defendants. Although the Court takes no position regarding the merits of these claims, Plaintiff shall be allowed to proceed, for now, with his state law claims against the defendants for negligence, false imprisonment, and breach of contract.

### Dismissal of Official Capacity Claims

Plaintiff's official capacity claims fail in their entirety. Typically, defendants are named in their official capacities when a plaintiff is seeking injunctive or declaratory relief. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Plaintiff seeks neither. He requests only monetary relief.

Further, Plaintiff is no longer incarcerated at Shawnee, where the events giving rise to this action occurred. Therefore, even if Plaintiff requested injunctive relief in his complaint, the request would be moot. *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot.").

What is more, Plaintiff cannot proceed with a claim for monetary damages against any of the defendants in their official capacities. When a plaintiff seeks monetary damages against a state official, he must bring the suit against the official in his or her *individual* capacity. This is because a suit for money damages against a defendant in his or her official capacity is really a suit for money damages against the state and is barred by the Eleventh Amendment. *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987).

The law on this point is clear. Section 1983 creates a federal remedy against any "person" who, under color of state law, deprives "any citizen of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws." *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dep't. Health*, 699 F.3d 962, 972 (7th Cir. 2012) (quoting 42 U.S.C. § 1983). The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars suits against states in federal court for

money damages. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). All official capacity claims against the defendants fail and shall be dismissed with prejudice.[1]

## Pending Motions

Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 2) shall be addressed in a separate Order of this Court.

Plaintiff's motion for recruitment of counsel (Doc. 3) is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for a decision.

## Disposition

**IT IS HEREBY ORDERED** that all **OFFICIAL CAPACITY** claims against the defendants are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNTS 1, 2, 3,** and **4** are subject to further review against each defendant in his or her individual capacity. With regard to **COUNTS 1, 2, 3,** and **4,** the Clerk of Court shall prepare for Defendants **ILLINOIS DEPARTMENT OF CORRECTIONS DIRECTOR, K. HUNTER, WARDEN ETIENNE, MAJOR DENNISON, B. ALLARD,** and **J. BARWICK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant,

---

[1] Plaintiff named the IDOC Director in his or her official capacity only. Nevertheless, the Court will allow the individual capacity claims against this defendant to proceed at this time. Plaintiff is proceeding in this action *pro se* and is therefore held to a less exacting pleading standard.

and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on Plaintiff's motion for recruitment of counsel (Doc. 3).

Further, this entire matter is **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 20, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**